# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOHN FULTON, ANTHONY MITCHELL, and ANTONIO SHAW, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 07 C 5569 ) ) Judge John W. Darrah |
| DET. ZALATORIS #20919, DET. L. ROLSTON #20101, J. BREEN #60051, DET. J. STRUCK #20857, DET. R. GIRARDI #20479, and DET. E. WINSTEAD #20019, individually, | ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, John Fulton ("Fulton"), Anthony Mitchell ("Mitchell"), and Antonio Shaw ("Shaw"), filed suit against Defendants, Detectives Zalatoris, Rolston, Struck, Girardi, and Winstead, and Officer Breen, asserting four causes of action under 42 U.S.C. §§ 1983 and 1988 and Illinois law. Count I alleges false arrest, Count II alleges coercive interrogation, Count III alleges conspiracy, and Count IV alleges deprivation of the right to a fair trial. Presently pending before this Court is Defendants' Motion to Dismiss Plaintiffs' Complaint for failure to state a claim upon which relief can be granted.

## BACKGROUND

A reading of Plaintiffs' Complaint supports the following summary of the alleged conduct of the parties.

On or about March 10, 2003, an individual named Christopher Collazo ("Collazo") was found dead. On the day of Collazo's killing, Chicago police received a call describing two males

in a dark alley near a fire, the same area where Collazo's body was found. There was conflicting evidence regarding the race of the two men seen in the alley.

Collazo's friend, Marcus Marinelli ("Marinelli"), later informed Chicago police that approximately five and a half weeks before Collazo's killing, Collazo and Marinelli had robbed Fulton at gunpoint. Marinelli told police that he believed "the three black boys that were robbed killed Collazo."

Based on the information received from Marinelli, on March 11, 2003, Zalatoris questioned Johnitta Griffin ("Griffin"), who at the time was 17 years of age. Griffin admitted introducing Fulton to Collazo but denied any knowledge of Collazo's killing. On March 13, 2003, at 11:00 p.m., Griffin was taken to Area One police station ("Area One") for questioning. Griffin was placed in a room, left alone, and told that she would be charged with murder. On March 14, 2003, after being held against her will, yelled at, and shown bloody pictures of Collazo's body, Griffin offered information regarding the night of Collazo's killing. At 9:45 a.m., Griffin gave a written statement to Rolston and an Assistant Cook County State's Attorney that contained information about Fulton and Callazo.

Griffin was later brought before a grand jury to testify. One of the defendants (unnamed in Complaint) escorted Griffin to the grand jury, threatened her, and coerced her into giving false testimony.

No investigation into exculpatory evidence was conducted. Zalatoris admitted he did not investigate false statements made by Griffin with regard to phone calls she alleged Fulton made to her the night of Collazo's killing. There was no evidence tending to show that Plaintiffs had been in contact with Collazo the night of his death.

On March 18, 2003, Fulton was arrested and brought to Area One for questioning about Collazo's death. Fulton asserted his innocence. Rolston and Girardi then obtained consent to search Fulton's apartment and vehicle. None of Collazo's blood was found in Fulton's apartment or vehicle. Fulton was later turned over to Zalatoris and Breen. Fulton continued to deny involvement in Collazo's death. Fulton also informed Rolston and Winstead that he had a videotape showing himself and his girlfriend together at the time of Collazo's death. After being presented with Griffin's statements, Fulton continued to maintain his innocence. Through physical and psychological abuse, Defendants forced and coerced Fulton to make a fabricated statement regarding Collazo's death. As a result, Fulton was charged with first degree murder.

Zalatoris later arrested Mitchell. Mitchell also denied any involvement in Collazo's death. Mitchell was presented with Fulton's statements and through physical and psychological abuse, was forced to make a statement about Collazo's death. Mitchell was subsequently charged with first degree murder.

Defendants also arrested Shaw. Shaw was presented with Fulton's and Mitchell's statements and, through physical and psychological abuse, was forced to confess to killing Collazo. Shaw was also charged with first degree murder.

Defendants reached an agreement amongst themselves to arrest and charge Plaintiffs. That conduct was motivated by racial animus and discriminatory purpose. Defendants conspired to deprive Plaintiffs of exculpatory evidence and failed to inform prosecutors that Plaintiffs' admissions were false, fabricated, and coerced through physical and psychological abuse. Nor did

they inform prosecutors that there was no evidence to support Plaintiffs' statements. As a result of Defendants' conduct, Plaintiffs suffered violations of their constitutional rights, emotional anxiety, humiliation, fear, monetary loss, and pain and suffering.

On November 23, 2005, a *nolle prosequi* order was entered with respect to the charges against Shaw. On March 16, 2005, Plaintiffs filed an action identical to the one now before the Court. On August 31, 2006, Fulton and Mitchell were convicted of murdering Collazo. Both Fulton and Mitchell have appealed their convictions, with briefs due in the Illinois Appellate Court on January 2, 2008. As a result of Fulton and Mitchell's convictions, on October 10, 2006, Plaintiffs voluntarily dismissed their initial suit, subject to a requirement that any re-filing take place within one year. The action presently pending before this Court was filed shortly before the exhaustion of that one-year period.

## ANALYSIS

In ruling on a motion to dismiss, the court must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the non-moving party. *Sprint Spectrum L.P. v. City of Carmel, Ind.*, 361 F.3d 998, 1001 (7th Cir. 2004). Federal Rule of Civil Procedure 8(a)(2) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To meet Rule 8(a)(2)'s requirements, the complaint must describe the claim in sufficient detail "in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" *Bell Atlantic Corp. v. Twombly*, __ U.S. __, __, 127 S. Ct. 1955, 1964 (2007) (*Bell Atlantic*) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Second, its

4

allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level;' if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Serv., Inc.*, 496 F.3d 773, 767 (7th Cir. 2007) (citing *Bell Atlantic*, 127 S. Ct. at 1973 n. 14).

*Count I: False Arrest*

Defendants argue that each of Plaintiffs' claims must be dismissed because they imply the invalidity of Fulton and Mitchell's convictions. In a suit for damages under § 1983 "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994) (*Heck*). Generally, a § 1983 plaintiff seeking damages for an allegedly unconstitutional conviction or imprisonment, or other harm that would render a conviction or sentence invalid, "must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 487. A claim barred by the *Heck* doctrine is deemed not cognizable under § 1983 until the plaintiff can show that a claim meets the doctrine's requirements. *Heck*, 512 U.S. at 487.

A claim for false or wrongful arrest does not, however, necessarily imply the invalidity of a conviction. *Booker v. Ward*, 94 F.3d 1052, 1057 (7th Cir. 1996) (*Booker*). The favored rule is that a § 1983 false arrest claim does not undermine a conviction and will begin to accrue from the day of the arrest. *Wallace v. City of Chicago*, 440 F.3d 421, 427 (7th Cir. 2006) (reaffirming *Booker* and disapproving a case-by-case evaluation of the evidence which "eschews a clear rule for false arrest claims"). Furthermore, doctrines like independent source and inevitable discovery argue against the

contention that a claim for false arrest implies the invalidity of a subsequent conviction. *Heck*, 512 U.S. at 487 n.7 (citing *Murray v. United States*, 487 U.S. 533, 539 (1988)) (*Murray*); *see also Wallace*, 440 F.3d at 426. The independent source doctrine allows "'information which is received through an illegal source [to be] considered . . . cleanly obtained when it arrives through an independent source.'" *Murray*, 487 U.S. at 538 (quoting *United States v. Silvestri*, 787 F.2d 736, 739 (1st Cir. 1986)). Similarly, the inevitable discovery doctrine allows the government to show that evidence that was illegally obtained would have been discovered regardless of statutory or constitutional violations, thereby allowing for its admission. *Nix v. Williams*, 467 U.S. 431, 447 (1984). Both doctrines permit a valid conviction despite a false arrest based on evidence legally obtained through other sources or which would have been discovered regardless of the false arrest and evidence illegally obtained and barred as a result thereof. For these reasons, Plaintiffs' claim for false arrest is not barred by *Heck*.

Though Plaintiffs' false arrest claim is not barred by *Heck*, proceedings with regard to this claim must be stayed. The pending appeals of both Fulton and Mitchell's convictions require consideration of the work of the Illinois Appellate Court. *See Younger v. Harris*, 401 U.S. 37 (1971) (*Younger*) (urging federal courts, absent extraordinary circumstances, to abstain from enjoining state criminal proceedings and to respect considerations of comity). Given the pendency of those appeals, it is important to avoid "potential federal-state friction" by allowing Illinois State Courts a full opportunity to consider the circumstances of the pending appeals before proceeding with Plaintiffs' civil action. *Simpson v. Rowan*, 73 F.3d 134, 138 (7th Cir. 1995) (*Simpson*) (vacating district court's order dismissing appellant's complaint against police officers and prosecutors and remanding with instructions to stay the Fourth Amendment claims for damages

pursuant to *Younger* after determining that the claim survived *Heck*). Furthermore, dismissing the false arrest claim rather than staying the proceedings would act in practical effect to bar Plaintiffs from later refiling the claim. Although Plaintiffs' initial filing was timely, if the claim was dismissed, Plaintiffs would no longer be able to comply with Illinois' two-year statute of limitations. *See Booker*, 94 F.3d at 1056. As in this case, where a claim "for monetary relief cannot be redressed in [a parallel] state proceeding," a stay must be ordered. *Deakins v. Monaghan*, 484 U.S. 193, 202 (1988).

Therefore, given considerations of comity and in order to avoid altogether barring Plaintiffs from bringing a false arrest claim, proceedings with to the false arrest claim are stayed.

*Count II: Coercive Interrogation*

Defendants argue that Plaintiffs' coercive interrogation claim should be dismissed pursuant to the *Heck* doctrine. Because Plaintiffs argue that their convictions were based primarily on their coerced confessions, recovery for that alleged coercion would necessarily imply the invalidity of the convictions. Without a showing by Fulton and Mitchell that their convictions were previously invalidated, their coercive interrogation claims are barred by *Heck*. *See Cannon v. Burge*, 2006 WL 273544 at 9 (N.D. Ill. Feb 2, 2006) (plaintiff's coercive interrogation claim was timely because it was previously barred by *Heck* when plaintiff alleged that prosecution's only evidence was an allegedly coerced confession).

The *nolle prosequi* order entered with regard to Shaw, however, allows Shaw's coercive interrogation claim to survive application of the *Heck* doctrine. Although Shaw's claim survives, it must be stayed for the pendency of Fulton and Mitchell's appeals in consideration for the work of the Illinois State Courts as discussed above.

*Count III: Conspiracy*

Defendants argue that Plaintiffs' conspiracy claim also fails under the *Heck* doctrine. A successful recovery for the alleged agreement reached "amongst [Defendants] to wrongfully arrest and charge Plaintiffs," would necessarily imply the invalidity of Fulton and Mitchell's convictions. *See Simpson*, 73 F.3d at 136 (applying *Heck* doctrine to dismiss plaintiff's conspiracy claim because, if proven, it would necessarily invalidate plaintiff's conviction). Again, there has been no showing that Fulton and Mitchell's convictions have been invalidated, therefore, their conspiracy claims must be dismissed. Shaw's conspiracy claim, however, does survive, but must be stayed during the pendency of Fulton and Mitchell's appeals.

*Count IV: Deprivation of the Right to a Fair Trial*

Finally, Defendants argue that Plaintiffs' claim for deprivation of their rights to a fair trial should be dismissed as barred under the *Heck* doctrine. A claim for deprivation of the right to a fair trial certainly implies the invalidity of a conviction by directly calling into question the trial from which the conviction arose. *See Cannon*, 2006 WL 273544 at 9 (a claim for deprivation of the right to a fair trial, on its face, "directly contests the validity" of a conviction). Therefore, without a showing by Plaintiffs' that Fulton and Mitchell's convictions have been invalidated, their claims for deprivation of the right to a fair trial are premature under the *Heck* doctrine. Shaw's claim of deprivation of the right to a fair trial survives the *Heck* rule, but must be stayed during the pendency of Fulton and Mitchell's appeals.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is granted in regard to Fulton's and Mitchell's claims contained in Counts II, III, and IV of Plaintiffs' Complaint. Plaintiffs' claims in Count I and Shaw's claims in Counts II, III, and IV are stayed during the pendency of Fulton's and Mitchell's appeals.

Dated: March 12, 2008

JOHN W. DARRAH
United States District Court Judge